## No. 132.

### P. J. SULLIVAN *v.* JOS. G. BROWN ET ALS.

Where one valid claim against the City of New Orleans for services rendered is entirely assigned by its owner, at different times, to two separate assignees, the assignee who gives notice to the city as prescribed by its ordinances will be protected; so where the administrator of public accounts of said city illegally authorizes payment to the assignee who failed to give the required notice, but merely gave informal notice, said administrator and his sureties will be held responsible to assignee injured thereby and be required to pay him the amount of his claim and damages.

*Chas. S. Rice,* attorney.

*Sam P. Blanc,* attorney.

His Honor Judge W. H. Rogers delivered the opinion and decree of the court in the words and figures following, to wit;

The City of New Orleans had contracted with one John Heil to prune the trees on its various neutral grounds. It is claimed by plaintiff that Heil transferred to him, on May 13, 1878, his claim against the city for such work amounting to the sum of $581.25.

Joseph G. Brown, one of the defendants, was at this date administrator of public accounts of the City of New Orleans, who, by virtue of the provisions of the city charter, has general superintendence of all claims and demands against the City of New Orleans and who was required to keep a record of all ordinances making appropriations for general and special

claims; issue warrants on the department of finance for the "payment of all claims; the said warrants to be consecutively numbered, corresponding to the number of the vouchers upon which they are issued, and shall specify the amount or fund on which they are drawn."

When plaintiff on May 13 presented his transfer for payment and registered it, his demand was refused, the official claiming that the law prohibited the administrator of public accounts from drawing or signing any check on the department of finance, no appropriation having been made therefor. On the 27th of May 1878, an ordinance was passed by the City Council and duly promulgated, providing for the payment of the claim of John Heil—plantiff in presenting his transfer at this date, was informed that his transferrer had by a previous act, dated March 26, 1878, transferred to the Citizen's Bank his claim to the extent of $500—that the city had been duly notified thereof on 27th of March 1878—that for the sum in excess say $81.25, defendant would warrant in favor of plaintiff. This was refused. The two transfers are written on the same apparently official forms—evidently in the same handwriting, and specifying for pruning trees, referring to the same ordinance, No. 4515, differing only in the amount and month. It appears, however, that the notice of transfer given to the city by the Citizen's Savings Bank—referred to the claim of Heil for curing trees, and counsel for plaintiff insists the transfer was for a claim for planting trees—which was also held by Heil in March. Two facts, however, oppose this conclusion—first, that the revoked ordinances for the planting trees as not having been executed—secondly, an examination of the transfer plainly written for "pruning trees", at once declares the notice referred to for curing trees to have been a clerical error—; the act of transfer gives titles, the notice to the city was for its guidance and protection as well as that of the transferee.

Defendant, administrator, after considering the matter—paid the Citizen's Savings Bank and required a bond in favor of the City of New Orleans to secure it against all damages

and costs in case it should appear the wrong person had been paid. Under this state of facts the administrator of public accounts and his sureties are sued for the amount claimed by plaintiff and from a judgment against them the sureties have appealed.

It is contended that the administrator and his surety are liable to plaintiff because the duty required of him was imperative and specific, one with respect to which he was clothed with no discretion or judgment.

These transfers of claims against the city are authorized by ordinance 2066, Administration Series approved April 1, 1873, and the transfers before us refer to this ordinance as the authority for their issuance by the department of improvement under the control of which was the Heil contract.

There are two sections of the ordinance which bear directly upon the question before us.

Section 2 reads—be it further ordained that salaries, wages or other claims against the city may be transferred by any person owning or holding the same, provided an instrument of transfer or assignment be filed in the department of public accounts. Section 3, be it further ordained that on the filing of a transfer or assignment, in the department of public accounts for any valid claim, the administrator of said department shall immediately note the transfer on the proper payroll, if said transfer be for salary or wages, and all other transfers in the proper book of said department, etc., etc. The duties here imposed and the law of the corporation declaring those provisions upon which and under which certain transactions shall be had with the municipal government are very plain we find no reason to resort to further authority.

When the Citizen's Savings Bank obtained the transfer, it knew that under ordinance 2066 it was necessary to file an instrument of transfer or assignment in the department of public accounts.

A simple notice from the transferee to the city that a transfer had been made, referred necessarily to some document evidencing the assignment, and to the original contract of transfer.

Such a notice was not an instrument of transfer or assignment —nor was it even contemplated by the ordinance that it should have such an effect, for in section 3: "shall note the transfer in a book on the filing of a transfer or assignment", and the very instruments themselves are printed and prepared with the directions "deposited in the department of public accounts for registration"........18.........

We do not consider the city bound by this notice. Besides there is no evidence that even as to it the law was complied with. When therefore, plaintiff on May 13 presented the instrument of transfer held by him it should have been filed and noted in a proper book of the department—and it does appear as a matter of fact that the instrument of transfer held by the bank was filed only on May 27, 6 days after the passage of the ordinance of payment.

Section No. 5, extra session 1870 provides, that if by reason of the failure of the comptroller or the auditing officer of the City of New Orleans or the treasurer or disbursing officer of said corporation, to perform his duty, or if, by reason of the neglect, or malfeasance of them, or either of them, any person or persons, corporation, or corporations, shall be unjustly delayed in the payment of any judgment or demand against the City of New Orleans, and shall not be paid in their due and regular order in which said demands are entitled to be paid, and shall be prejudiced and suffer loss and damage thereby, or by reason of any unjust preference to any other creditors, such person or persons, corporation, or corporations, so injured by the act of either of said officers, shall have a right of action against such officer or officers individually by whose act or acts he or they have suffered loss or damages, and against the surety or sureties on the official bond of each officer and may recover damages therefor against such officer and surety, in such amount as they may establish on the trial of such cause.

It is evident if the administrator of public accounts had filed the assignment held by plaintiff on May 13 as it was his duty to have done—or had the bank performed its duty to-

wards itself on March 27th this litigation would not have occurred, and plaintiff would have had no reason to complain.

Under the facts and the law—the payment due him has been unjustly delayed and his claim has not been paid in its due and regular order.

The plaintiff has shown a sufficient cause of action—the money which was in the city treasury and which should have been paid to him was paid to another—to say that he should be denied the benefit of a law enacted for the prevention of such acts of negligence as are disclosed by this record, would be requiring a much sterner course of proceeding for the innocent than for the one who caused the injury.

He might have the right to sue the bank, the city, and the city may be solvent and the bank ready to respond to any judgment rendered against it, but wrong has been done—he has shown the wrong—and has pursued those from whose act the wrong proceeded and we think with the district judge, his cause a very proper one.

Judgment affirmed.

On Rehearing.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

After hearing a second argument in this case, and giving to the same a second and very careful examination, we have not been brought to change the opinion originally formed.

The defendants have placed their reliance in the efforts to secure the reversal of the first decree, upon the following propositions: 1. That the ordinance 2066 was in conflict with the general laws of this state regulating assignments of incorporeal rights and subrogation, that the general laws cannot be set aside or affected by municipal legislation. 2. That the bond executed by the defendant Brown was to the City of New Orleans, and that no liability existed upon said bond to third persons, except under the provisions of section 4, Acts of 1870, No. 5; and that section gives to third persons only such damages as may be actually proven.

1st. The general laws relied upon by appellant are articles 2642 *et seq.*, La. C.C. These provisions of law do not establish any particular manner of giving notice of the assignment of incorporeal claims, and ordinance No. 2066 of the City of New Orleans can not be accused of being in actual conflict with the state law.

These articles of the code of Louisiana affect no matter of public policy and parties may take themselves from under their operations by contracts express or implied, La. C.C. Art. 11, 1964, 1967, Alford vs. Tiblier, 1 McGloin 151.

Where there are but one or at all events only a few transactions concerned, the informality of transfer and notice which find their justification in La. C.C. Arts. 2642, etc., is doubtless for the best. But, where, as must be the case in the financial management of a great city, or even of private corporations doing extensive business, the number of its creditors for amounts of all sizes may render this informality a source of intollerable annoyance, and even a dangerous confusion. There is no reason why such corporations, or for that matter individuals similarly circumstanced, may not protect themselves from such perils or inconveniences by stipulating against any conventional transfer whatever, and impose upon assignments any restrictions or forms which are reasonable. When this has been done, the party contracting with said corporation or individual cannot complain of what he has fully agreed to; and as to third persons they can acquire no greater right than those that are created by the conventions and reside in their assignors.

Municipal legislation is the expression of municipal will. In its character as a portion of the law of the land, it is presumed *juris ex de jure* to be known to every person residing within the area over which it operates. The ordinance No. 2066 was a public declaration that the City of New Orleans after its date, would not enter into contracts which could be assigned by word of mouth alone, and with only verbal and informal notice of transfer. There was in the way of this expression of municipal will, and of its enforcement no law prohibitory

in its nature; and no principle of public policy was violated. Every one who contracted with said city was charged with knowledge of this ordinance, as it was applicable to all the city engagements. The municipal will in connection with its contracts being known to parties dealing with the corporation, entered into such contracts and formed part of them. The principle would be the same where a bank had adopted rules regulating the reception of deposits or the making of discounts, and these rules were brought to the knowledge of customers who made no objection—certainly in such a case, the regulations would enter by implication into the contracts, etc.

So in the case just supposed, a third person familiar with these regulations, to whom the depositor had transferred his rights or claims would be equally held to the observance of the forms or requirements formulated by them.

We do not mean to say that actual notice of the special features of a convention is necessary in order to bind third parties acquiring rights thereunder. On the contrary, they are themselves bound to inquire and learn at their own peril the exact and real character of the contract under which they acquire. But in this instance, the assignee, as one subject to the municipal legislation of the City of New Orleans is chargeable with full knowledge of ordinance 2066, and its contents.

Nor, is it alone upon the grounds just stated that our opinion in this case can be justified. Even without express mention, municipal corporations are vested with power to enact such by-laws and ordinances as are necessary or proper for the purpose of accomplishing effectively the duties imposed, provided such by-laws or ordinances are not in contravention to prohibitory laws nor contrary to public policy. The administration of its own finances, the entering into and performance of contracts for work or things essential, the disbursement of its moneys—all these things are necessarily under its control and therefore constitute proper subjects for its legislation, in default of constitutional, statutory prohibitions. Ordinance No. 2066 is therefore binding upon every resident of New Orleans, as a municipal law upon a matter that is

within the scope of municipal authority to enact, for the City of New Orleans has as much right by its ordinances to exempt itself from the operation of La. C.C., Art. 2642 *et seq.*, as private individuals or corporations have to do so by express stipulation. If those articles are not so prohibitory as to preclude themselves from the operation or control of private conventions, they are equally inoperative in the matter of restraining municipal corporations from adopting necessary and proper by-laws regulating assignments and notices thereof, so far as such corporations themselves are concerned, and no further.

2nd. We do not consider that the language of section 4 of Art. No. 5, extra session of 1870, page 10, takes the case now under consideration from under the operation of the general rules of evidence. That language, in connection with the recovery to be had by the delayed creditor is as follows— "May recover damages therefor against said officer and surety for such amount as they may establish on the trial of such cause." In no case are the counts authorized to condemn a defendant in favor of a plaintiff where the latter does not establish his case upon the trial, except when the law itself specially fixes penalty or damages as is done in some matters.

There are, however, more ways of establishing a claim than by direct and positive proof. Circumstantial evidence will alone often justify a condemnation, and legal presumptions may have the same effect. La. C.C. 2284, 2285, 2287, 2288.

So, in the particular case under consideration, as in others, the rule of principle of *onus probandi* applies, and a plaintiff may be exused from going further than to create a presumption that his claim is just, and so cost the burden of proof upon the defendant.

We had occasion in the case of Monteguet vs. Waggaman, 1 McGloin 69, to consider this question of proving damages against a sheriff who had released property which had been levied upon, under a writ in his hands. We there examined fully the authority and concluded the burden of proof shifted from the plaintiff, rested upon the defendant the moment it

was shown that the writ of the former was removed by the officer's fault from the property of the debtor. The logic of that case is fully applicable to this. Here, as there, we have a public officer, held by express law to do certain things, for those requiring their services. Here it is shown that had defendant Brown done his full duty in the premises the claim of the plaintiff would have been satisfied, as there it was shown that the sheriff had in his hands property sufficient to satisfy the writ, and out of which, but for the release, it could have been satisfied. There we held, that having shown the loss of a certain and immediate means of securing payment, and this by the fault of a public officer, the injured party was not compelled to go further and establish the fact it had become impossible to seize and sell other property. In this instance, by purity of reason we must hold that having shown that his claim was not paid in due time and order because, through the fault of defendant Brown, the money appropriated to meet it had gone to another, the plaintiff is under no necessity of going further to prove that at no time in the future will he be able to make good his claim.

There is also another consideration which is not without weight. La. C.C. 2315 declares that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it, etc."

In this case, but for the act of defendant Brown, plaintiff would have had his money paid in due course under the ordinance adopted for the liquidation of this claim. It seems the letter and spirit of article 2315 would not be complied with, if instead of making defendant do for plaintiff what would have been done for him by the city, but for the fault complained of, which is to pay his claim in cash and without further trouble or delay, we compel him before seeking relief against defendant to embark upon a tedious and doubtful litigation against either the City of New Orleans or the Citizen's Savings Bank. This would not be compelling defendant to repair the damage. If at the end of a long and laborious lawsuit either the City of New Orleans or said bank can be

forced to pay, it is more exigible to impose this labor and annoyance upon the defendant whose fault has given birth to the necessity thereof.

We see no reason therefore, which would justify us in rendering a decree herein different from that originally delivered and it is accordingly ordered that said original decree remain undisturbed.